1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| SHALAYNE E. JOHNSON, | |
|---|---|
| Plaintiff, | CASE NO. 3:15-cv-05597 JRC |
| v. | ORDER ON PLAINTIFF'S COMPLAINT |
| CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration, | |
| Defendant. | |

This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S. Magistrate Judge and Consent Form, Dkt. 5; Consent to Proceed Before a United States Magistrate Judge, Dkt. 7). This matter has been fully briefed (*see* Dkt. 11, 15, 16).

After considering and reviewing the record, the Court concludes that although both parties agree the ALJ erred in evaluating plaintiff's mental impairments and in

analyzing intelligence testing in the record, further administrative proceedings would be useful because there are outstanding issues in the medical evidence.

Therefore, this matter is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner for further consideration.

BACKGROUND

Plaintiff, SHALAYNE E. JOHNSON, was born in 1992 and was 18 years old on the alleged date of disability onset of October 15, 2010 (*see* AR. 251-56). Plaintiff was in special education classes and at the last hearing stated she had enough credits to graduate, but had not yet received her diploma (AR. 37, 84).  Plaintiff has no past relevant work experience (AR. 47).

According to the ALJ, plaintiff has at least the severe impairments of "bipolar. disorder, anxiety disorder, cognitive disorder, and learning disorder (20 CFR 416.920(c))" (AR. 17).

At the time of the hearing, plaintiff was living with her mother (AR. 85).

PROCEDURAL HISTORY

Plaintiff's application for Supplemental Security Income ("SSI") benefits pursuant to 42 U.S.C. § 1382(a) (Title XVI) of the Social Security Act was denied initially and following reconsideration (*see* AR. 146-53, 157-64). Plaintiff's requested hearing was held before Administrative Law Judge Stephanie Martz ("the ALJ") on November 19, 2013 (*see* AR. 33-79) and a supplemental hearing was held on February 27, 2014 (AR. 80-112). On March 27, 2014, the ALJ issued a written decision in which she concluded that plaintiff was not disabled pursuant to the Social Security Act (*see* AR. 12-32).

In plaintiff's Opening Brief, plaintiff raises the following issues: (1) Did the ALJ err by rejecting a valid IQ test result and failing to find plaintiff disabled under listing section 12.05(B); and (2) Did the ALJ err by rejecting opinions from the consultative examining psychologist without providing reasons supported by substantial evidence and adopting the opinions of a non-examining psychologist (*see* Dkt. 11, p. 1).

The defendant concedes that the ALJ erred in evaluating plaintiff's mental impairments and agrees that this case should be remanded, but the parties disagree about whether or not the Court should remand for further administrative proceedings or for a finding of disability and payment of benefits (*see* Dkt. 15, p. 1, 2).

STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

DISCUSSION

(1) <u>Whether the case should be remanded for further administrative proceedings or reversed for payment of benefits.</u>

This case turns on the question of whether or not plaintiff's most recent IQ score is valid, thus rendering plaintiff eligible for benefits under Listing 12.05(B). Under Listing 12.05(B), an individual who has "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the

developmental period," as well as "a valid verbal, performance, or full scale IQ of 59 or less," is presumed disabled and entitled to benefits. 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.05 & 12.05(B). While in elementary school, plaintiff had taken two IQ tests which resulted in Full Scale IQ scores of 83 and 86 (AR. 380, 387). However, all parties agree these scores are no longer valid for purposes of Listing 12.05, as more than two years have passed since the IQ tests' administration. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 112.00(D)(10) ("IQ test results obtained between ages 7 and 16 should be considered current . . . for 2 years when the IQ is 40 or above").

More recently, examining psychologist Dr. Felicia Mueller, Psy.D., examined plaintiff in 2011, 2012, and 2013 in conjunction with her application for disability benefits (AR. 429-35, 467-71, 472-82). Longitudinally, Dr. Mueller's examinations and opinions reflect deteriorating performance on mental status examination and on objective testing. For example, plaintiff's fund of information, ability to interpret proverbs, mood, affect, thought content, and orientation to spheres were essentially unremarkable in 2011 (AR. 432). However, in the subsequent evaluations, plaintiff demonstrated depressed mood, a diminished fund of information, a diminished orientation to spheres, an inability to perform mental calculations and interpret proverbs, and an inability to complete Trail-Making A & B tests (AR. 467-68, 471, 475-76). During the 2013 examination, Dr. Mueller also administered the Wechsler Adult Intelligence Scale – IV ("WAIS-IV") which produced a Full Scale IQ score of 48, well below the threshold for Listing 12.05(B) (AR. 477).

The ALJ gave great weight to Dr. Mueller's 2011 opinion; however, he gave no weight to Dr. Mueller's 2012 and 2013 opinions, as the ALJ found Dr. Mueller did not explain significant inconsistencies in objective testing across the three examinations and Dr. Mueller's opinion was not consistent with plaintiff's school records (AR. 25). Further, relying on the IQ scores from plaintiff's adolescence, as well as consulting medical expert testimony concerning those scores, the ALJ found Dr. Mueller's WAIS-IV scores were invalid (AR. 18).

The parties agree that the ALJ erred in her evaluation of plaintiff's mental impairments and in her analysis of the intelligence testing conducted by Dr. Mueller in 2013. However, the parties disagree as to whether this matter should be reversed and remanded for further proceedings or for an award of benefits. Plaintiff contends that further development of the record is unnecessary as the record establishes plaintiff meets the requirements of Listing 12.05(B), and therefore plaintiff should be found disabled and this matter should be remanded with a direction to award benefits (*see* Dkt. 16, pp. 8-9).. Defendant contends that further development of the record is necessary because the ALJ must be given an opportunity to resolve discrepancies in the medical opinion evidence concerning the validity of Dr. Mueller's IQ test results, obtain additional IQ testing, and reevaluate whether or not plaintiff 's impairments meet or equal a listed impairment.

Generally when the Social Security Administration does not determine a claimant's application properly, "'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). However, the Ninth Circuit has put

forth a "test for determining when [improperly rejected] evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (*quoting Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)).

At the first step, the Court should determine if "the ALJ has failed to provide legally sufficient reasons for rejecting [the particular] evidence." *Smolen, supra,* 80 F.3d at 1292 (citations omitted). Next, as stated recently by the Ninth Circuit:

> Second, we turn to the question whether [or not] further administrative proceedings would be useful. In evaluating this issue, we consider [if] the record as a whole is free from conflicts, ambiguities, or gaps, [if] all factual issues have been resolved, and [if] the claimant's entitlement to benefits is clear. under the applicable legal rules.

*Treichler v. Comm'r of Soc. Sec. Admin.,* 775 F.3d 1090, 1103–04 (9th Cir.2014) (citations omitted).

The final step, then, is to determine whether or not "if the improperly discredited evidence [was] credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison v. Colvin,* 759 F.3d 995, 1020 (9th Cir.2014) (*citing Ryan v. Comm'r of Soc. Sec.,* 528 F.3d 1194, 1202 (9th Cir.2008); *Lingenfelter v. Astrue,* 504 F.3d 1028, 1041 (9th Cir.2007); *Orn v. Astrue,* 495 F.3d 625, 640 (9th Cir.2007); *Benecke, supra,* 379 F.3d at 595; *Smolen, supra,* 80 F.3d at 1292). The court noted that at this final "stage of the credit-as-true analysis, we do not consider arguments against crediting evidence that the ALJ did not make." *Id.* at 1022 n.29.

The Court notes that the Ninth Circuit has clarified that the issue of whether or not further administrative proceedings would serve a useful purpose comes before the court decides and applies the final part of the credit-as-true rule. *See Treichler v. Comm'r of*

*Soc. Sec. Admin.*, 775 F.3d 1090, 1105 (9th Cir. 2014) (citations omitted).  The *Treichler* court, after noting inconsistencies between the claimant's statements and the record, concluded that because of conflicts and ambiguities in the record, and because not all essential factual issues were resolved, further factual development was necessary to resolve the issue of credibility. *Id.* at 1103–06. As noted by the court, "an ALJ's failure to provide sufficiently specific reasons for rejecting the testimony of a claimant or other witness does not, without more, require the reviewing court to credit the claimant's testimony as true." *Id.* at 1106.

Here, the parties agree that the first step is met, as defendant concedes the ALJ erred in evaluating plaintiff's mental impairments and in analyzing the intelligence testing conducted by Dr. Mueller in 2013 (*see* Dkt. 15, p.2).

However, the Court concludes that the second step is not met because the record as a whole is not free from ambiguities such that plaintiff's entitlement to benefits is clear under the applicable legal rules. *See Treichler*, *supra*, 775 F.3d at 1103-04. Although the parties agree that the ALJ failed to properly evaluate Dr. Mueller's opinions and associated IQ testing, the validity of Dr. Mueller's IQ scores is not clear from the record. Plaintiff argues that none of the evidence relied upon by defendant or the ALJ undermines the validity of Dr. Mueller's testing procedures; however, several medical opinions in the record question Dr. Mueller's evaluation and the validity of the IQ scores. For example, at a supplemental hearing, the ALJ called Dr. Kenneth Asher, Ph.D., a clinical psychologist, to evaluate the medical evidence. (AR. 89-108, 248).  Dr. Asher noted that Dr. Mueller failed to address significant discrepancies between plaintiff's

performance during her 2013 examination, and Dr. Mueller's two prior examinations in 2011 and 2012 (AR. 96-97). Dr. Asher also noted that plaintiff had taken previously two IQ tests in elementary school that resulted in Full Scale IQ scores of 83 and 86 (AR. 96, 380, 387). Dr. Asher recognized that these scores were not valid for the purpose of assessing whether or not plaintiff's impairments met the criteria of a listing (AR. 95). *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 112.00(D)(10) ("IQ test results obtained between ages 7 and 16 should be considered current . . . for 2 years when the IQ is 40 or above"). However, Dr. Asher still found the consistency between these scores significant, and thought they undermined the validity of Dr. Mueller's substantially lower Full Scale IQ score of 48 (AR. 95-97). In light of these issues, Dr. Asher concluded that Dr. Mueller's test results were invalid (AR. 97).

Two consulting medical examiners also reviewed Dr. Mueller's IQ testing and the medical evidence of record and came to a similar conclusion.  Dr. Leslie Postovit, Ph.D. found Dr. Mueller's IQ testing to be invalid, in part, because plaintiff's history and behavior during Dr. Mueller's three evaluations were not consistent with intellectual disability (AR. 121). Dr. Kristine Harrison, Psy.D. found Dr. Mueller's IQ testing to be invalid for similar reasons to Dr. Asher: Dr. Mueller's testing was inconsistent with plaintiff's prior IQ scores, Dr. Mueller's own examination findings, and Dr. Mueller's earlier mental status examinations (AR. 136-37). Along with Dr. Asher's opinion, the opinions of Dr. Postovit and Dr. Harrison create sufficient ambiguity about the validity of Dr. Mueller's IQ scores that plaintiff's ability to satisfy Listing 12.05(B), and thus be entitled to benefits, is not clear.

Further, even if the credit-as-true conditions were satisfied, "the record as a whole creates serious doubt as to [if] the claimant is, in fact, disabled within the meaning of the Social Security Act." *See Garrison, supra,* 759 F.3d at 1021.  In addition to the medical opinion evidence from Dr. Asher, Dr. Postovit and Dr. Harrison, as well as the inconsistencies they noted in Dr. Mueller's evaluations, plaintiff testified that she had a migraine during Dr. Mueller's IQ test, and she informed Dr. Mueller of that fact (AR. 91-92). Dr. Asher cited this testimony as a factor which calls into question the validity of Dr. Mueller's IQ scores (AR. 95). Though the ALJ found that plaintiff's migraines were not a severe impairment, plaintiff's own description of the conditions under which she took Dr. Mueller's IQ test suggests that the results of that test have questionable validity.

Finally, the Court recognizes that defendant has requested this case be remanded for, among other things, new IQ testing, a reevaluation of the medical evidence by a medical expert, and a evaluation of whether or not plaintiff's impairments meet or exceed Listings 12.05(B) or 12.05(C) (Dkt. 15, pp. 6, 12-13). In light of the ambiguities in the record concerning the validity of Dr. Mueller's 2013 IQ testing, the Court agrees that a remand to evaluate these issues would serve a "useful purpose," namely, determining whether or not Dr. Mueller's IQ score was valid, obtaining a separate IQ test free of the potential flaws noted by the medical experts, and allowing the ALJ to consider if plaintiff's impairments meet the criteria for Listings 12.05(B) or 12.05(C).  *See Thresher v. Astrue*, 283 Fed.Appx 473, 474-75 (9th Cir. 2008) (remanding to allow the ALJ to address the validity of an IQ score in the record, and to consider if the claimant met the requirements for Listing 12.05(C)).

1  Therefore, for the reasons stated and based on the record as a whole, the Court
2  concludes that this matter must be remanded for further administrative consideration.

3  CONCLUSION

4  Based on these reasons and the relevant record, the Court **ORDERS** that this
5  matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. §
6  405(g) to the Acting Commissioner for further consideration consistent with this order.
7  **JUDGMENT** should be for plaintiff and the case should be closed.
8  Dated this 29th day of February, 2016.

_____
J. Richard Creatura
United States Magistrate Judge